IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| Dennis and Suzanne Gomas, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> United States of America, ) <br> ) <br> Defendant. ) <br> ) | Case No.: |

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs **DENNIS AND SUZANNE GOMAS**, through undersigned counsel, files suit against Defendant, **UNITED STATES OF AMERICA** and alleges the following:

**PARTIES, JURISDICTION, AND VENUE**

**Parties**

1. Plaintiffs, **DENNIS GOMAS** (hereinafter "Mr. Gomas") and **SUZANNE GOMAS** (hereinafter "Mrs. Gomas" and collectively "the Gomases") at all relevant times are a resident of the City of Spring Hill, Hernando County, Florida.

2. The Defendant is the **UNITED STATES OF AMERICA** (hereinafter "Defendant").

## Jurisdiction and Venue

3. Under 28 U.S.C. § 1346, the District Courts of the United States have original jurisdiction over any civil action arising under the laws of internal revenue. Jurisdiction is proper in this Court because this action arises under the laws of internal revenue.

4. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this action is against the United States, the Plaintiff resides in the district of this Court, a substantial part of the events giving rise to the claim occurred here, and no real property is involved in this action.

## FACTS

5. Mr. Gomas and Mrs. Gomas are elderly individuals aged 78 and 74, respectively. The Gomases worked their entire adult lives to build sufficient savings in order to comfortably retire. Both Mr. and Mrs. Gomas finally retired on or about June 29, 2016. However, the Gomases peaceful retirement abrubtly ended when Ms. Gomas' daughter, Suzanne Anderson (hereinafter "Ms. Anderson"), fraudulently misrepresented an attorney and stole the Gomases' entire retirement savings. Their struggles did not end there. Due to Ms. Anderson's fraud, the Gomases owed the Internal Revenue Service (hereinafter "IRS") hundreds of

thousands of dollars. The Gomases contested this tax liability, but the IRS denied both their amended individual income tax return and request for appeals consideration.

### *History of My Pets Pride, LLC*

6. On or about December 2010, the Gomases became the owners and operators of Feline's Pride, LLC. Mr. Gomas inherited Feline's Pride, LLC from Mr. Gomas' brother after his brother's death. Feline's Pride, LLC was a seller of raw pet food. Customers would order the raw pet food online and the business would ship the orders to the customer. Feline's Pride, LLC's principal place of business was located in Buffalo, NY. On January 31, 2011, Mr. Gomas filed Articles of Organization with the state of New York and formed Gomas Enterprises, LLC. Mr. Gomas ran the business under this name after this date.

7. Because Mr. Gomas lived in Spring Hill, FL, he did not live in close enough proximity to supervise the day-to-day operations of Gomas Enterprises, LLC. As a result, Mr. Gomas relied upon the business manager, Jennifer Taylor, to oversee the day-to-day operations of the business.

8. Unbeknownst to Mr. Gomas, Ms. Taylor did not act in accordance with these responsibilities. Ms. Taylor began stealing inventory and selling Gomas Enterprise, LLC's customer list to competitors and failed to adequately supervise the other employees.

9. During this time, Gomas Enterprises, LLC struggled financially. Beginning in 2012, The Gomases began to personally loan money to Gomas Enterprises, LLC in order to keep the business operating. Mr. and Mrs. Gomas subsequently loaned the business approximately $1,200,000.

10. Around October 2014, Mr. Gomas fired Ms. Taylor after discovering Ms. Taylor's nefarious conduct. Mr. Gomas then moved the business to Florida. On October 30, 2014, Mr. Gomas registered the business in Florida under the name My Pets Pride, LLC (hereinafter "My Pets Pride") and began operating the business from his home. Once My Pets Pride began operating in Florida, Mr. Gomas' stepdaughter, Suzanne Anderson, began assisting him with the business.

11. On or about October 2015, Mr. Gomas, with retirement in mind, decided to close My Pets Pride. However, Ms. Anderson convinced Mr. Gomas to continue operating the business and entrusted Ms. Anderson to oversee the day-to-day operations. On or about June 2016, the Gomases dissolved My Pets Pride and turned the business over to Ms. Anderson. However, the location of the business remained in the Gomases' home.

12. On or about March 2017, Ms. Anderson told the Gomases that she thought that she could run My Pets Pride more efficiently from the home that she rented, which was located at 10140 Balcony Street, New Port Richey, Florida. The Gomases agreed, and Ms. Anderson moved the business and all of its assets to her

home. Ms. Anderson also convinced the Gomases to give her $20,000 to build a fence and shed at her home to assist the business. Despite visiting Ms. Anderson's home over the following months, the Gomases never physically observed this fence or shed that she sought to build.

### *Ms. Anderson's Fraudulent Scheme*

13.     On or about May 5, 2017, Ms. Anderson convinced the Gomases that Jennifer Taylor and other former employees of Feline's Pride, LLC opened Merchant Service sub-accounts under Feline's Pride, LLC's main Merchant Service account.[1] She further convinced the Gomases that the former employees obtained and used Mr. Gomas' personal identification, such as his social security number and date of birth, in order to set up the Merchant Service sub-accounts.

14.     Ms. Anderson stated that the former employees were using the sub-accounts to defraud internet customers. She convinced the Gomases that this fraud caused Merchant Services to hold the main account holder, Feline's Pride, LLC and Mr. Gomas, liable for the missing funds arising from the fraudulent sales. Furthermore, she convinced the Gomases that they needed to hire an attorney to prevent Mr. Gomas from being arrested for the fraudulent transactions. Ms.

---

[1] This complaint refers to the Merchant Services accounts as Feline's Pride, LLC's accounts because these accounts were created by Feline's Pride, LLC. The Merchant Services accounts were still being used by My Pets Pride (formerly Gomas Enterprises, LLC).

Anderson proposed that the Gomases should hire Anthony Rickman to represent Mr. Gomas in order to prevent his arrest.

15. On May 5, 2017, the Gomases decided to retain Mr. Rickman. Ms. Anderson told the Gomases that Mr. Rickman needed $125,000 in order to prevent Mr. Gomas from immediate arrest. The Gomases provided Ms. Anderson with $125,000, which she was to pay to Mr. Rickman. On May 7, 2017, the Gomases provided Ms. Anderson with an additional $13,000 to pay to Mr. Rickman for the same purpose.

16. After the receipt of these two payments, Mr. Rickman supposedly represented the Gomases. However, neither Mr. Gomas nor Mrs. Gomas ever met Mr. Rickman for any initial client meeting to go over the facts and circumstances of their case. The sole person who communicated with Mr. Rickman was Ms. Anderson. She relayed messages to the Gomases that supposedly came from Mr. Rickman.

17. Ms. Anderson often told the Gomases that Mr. Rickman found additional Merchant Service sub-accounts related to Feline's Pride, LLC and Mr. Gomas with outstanding balances. She told the Gomases that if they did not immediately send additional funds to Mr. Rickman to settle these accounts, then Mr. Gomas would be arrested. The Gomases would immediately provide Ms.

Anderson with the amounts that she requested in order to pay to Mr. Rickman to settle the sub-accounts.

18.     On November 6, 2018, Mrs. Gomas received an email from Ms. Anderson's personal email account titled "Money agreement, print, sign, and email back to me… suzy" and containing two documents. These documents contained language that resembled legal documents and mentioned two different settlement amounts of $7,200,000.00 ("$7.2M") and $17,200,000.00 ("$17.2M") payable to plaintiffs Mr. and Mrs. Gomas. The document containing the $7.2M offer suggested that TD Bank was the defendant, while the $17.2M offer suggested that Bank of America was the defendant.

19.     The Gomases often requested that Ms. Anderson make an appointment with Mr. Rickman so that they could meet with Mr. Rickman in person. However, Ms. Anderson often convinced the Gomases that she was handling everything and that the case was going well. When the Gomases pushed Ms. Anderson further to request a meeting, Ms. Anderson would tell them that Mr. Rickman was in court or too busy to meet or communicate personally with them.

20.     The Gomases believed everything Ms. Anderson told them regarding their case. Whenever Ms. Anderson told the Gomases that Mr. Rickman needed additional funds to settle sub-accounts, court costs, or other expenses, the Gomases provided the funds to Ms. Anderson to pay Mr. Rickman. In order to fund this

case, the Gomases withdrew funds from their IRA and pension accounts. In 2017 and 2018, the Gomases withdrew $1,174,020.00 and $1,245,727.00, respectively, and provided amounts to Ms. Anderson to pay to Mr. Rickman.

21. Beginning on or about January 2019, the Gomases demanded that Ms. Anderson allow them to communicate directly with Mr. Rickman. Shortly thereafter, they received their first communications supposedly from Mr. Rickman. The Gomases, along with Ms. Anderson, received an email from antrickmanlawgroup@gmail.com.

22. On August 30, 2019, the Gomases met with six friends, David Schmidt, Tina Tarone, Richard and Paula Drinkwater, and Larry and Pat Malkevich, at the Gomases' home. During this meeting, the Gomases' friends informed them that Ms. Anderson had been scamming the Gomases for the past few years. Larry Schmidt and Tina Tarone reached out to Attorney Anthony Rickman[2] who told them that the Gomases and Ms. Anderson were not clients of his and that he was not associated with the email address antrickmanlawgroup@gmail.com.

23. Ms. Anderson fabricated the Merchant Card sub-account issue. Feline's Pride, LLC and Mr. Gomas were not liable for any balances in any sub-

---

[2] "Attorney Anthony Rickman" refers to the actual Tampa based attorney while "Mr. Rickman" refers to the fraudulent identity created by Ms. Anderson.

accounts. Ms. Anderson also fraudulently misrepresented Attorney Anthony Rickman's identity. Ms. Anderson never contacted Attorney Anthony Rickman for the Gomases issue.[3] Every time Ms. Anderson requested money that needed to be paid to Mr. Rickman, Ms. Anderson fraudulently induced the Gomases into paying her and converted the money paid to her for own personal use. In order to perpetuate her fraud, Ms. Anderson went as far as to create the email account antrickmanlawgroup@gmail.com to more convincingly defraud the Gomases. Furthermore, Ms. Anderson fabricated the two documents that contained the $7.2M and $17.2M settlement offers.

24.     After hearing this, the Gomases met with officers of the Hernando County Police Department. On or about August 30, 2019, the Hernando County Police Department began investigating the actions of Ms. Anderson. Special Agent James Gau with the Florida Department of Law Enforcement led the investigation and communicated the investigation's progress with the Gomases. Ms. Anderson was subsequently arrested by the Hernando County Police Department on January 28, 2021.

### *Internal Revenue Service*

25.     On May 14, 2018, the Gomases filed their federal individual income tax return for tax year 2017. This return showed taxable income of $1,175,799,

---

[3] Ms. Anderson had been represented by Attorney Anthony Rickman previously in an unrelated matter.

which included $1,174,020 in pension and IRA distribution, a tax liability of $410,841.00, payments totaling $412,259.00. Once the Internal Revenue Service (hereinafter "IRS") received the tax return, the IRS assessed the Gomases a penalty for not pre-paying the tax in the amount of $758.14. After this penalty, the IRS issued the Gomases a refund for their overpayment of tax in the amount of $659.86.

26.     On February 24, 2020, the Gomases filed an amended individual income tax return for tax year 2017. **Exhibit A**. On this amended tax return, the Gomases deducted from income the $1,174,020 that they received from their IRA and pension accounts. Accompanying this amended return was form 1096 that showed that the Gomases issued Ms. Anderson a 1099-MISC in the amount of $1,174,020. In the statement accompanying the amended return, the Gomases stated that the distributions were used to pay expenses, such as "fictitious invoices, fake attorneys' fees, and other fraudulent mechanisms used by Ms. Anderson."

27.     On February 17, 2021, the IRS fully disallowed the Gomases' claim for refund submitted on their amended tax return for tax year 2017. **Exhibit B**. IRS Agent Christie Perez stated in her letter to the Gomases that these distributions were not deductible and must be included in income.

28.     On March 19, 2021, the Gomases filed a formal protest and request for appeals consideration with the IRS. **Exhibit C**. This appeal further detailed the

business nature of these expenses. On March 9, 2022, the IRS rejected the Gomases' appeal. **Exhibit D**.

## ASSIGNMENTS OF ERROR

29.     The Defendant erred when it denied the Plaintiffs' claim for refund for tax year 2017. The Defendant further erred when it determined that the distributions from the Plaintiffs' IRA and pension accounts in tax year 2017 were includable in the Plaintiffs' gross income under I.R.C. § 61. Under *Roberts v. Comm'r*, 141 T.C. 569, 577 (2013) the taxable distributee under of an I.R.C. § 408(d)(1) distribution may be someone other than the recipient or the purported recipient of the funds. The recipient of an IRA or pension distribution is not automatically the taxable distributee. *Id.* A crucial factor in determining if a distribution is includable in the gross income of an individual is whether the individual receives the economic benefit of the distribution. *Id* at 582. Here, the Plaintiffs received no economic benefit from the distribution. Ms. Anderson received the entire economic benefit of these distributions because she received the entire amount of the distributions through her fraudulent scheme.

30.     In the alternative, the Defendant erred by disallowing the ordinary and necessary business expenses incurred by the Plaintiffs in tax year 2017. I.R.C. § 162 states that a taxpayer may deduct all ordinary and necessary business expenses incurred during the taxable year. Here, the Plaintiffs paid Mr. Rickman, who they

believed to be representing Feline's Pride, LLC and Mr. Gomas, for legal services to settle Merchant Service sub-accounts opened under Feline's Pride, LLC's account. The payments of these legal fees were ordinary and necessary business expenses at the time that the expenses were paid because the Gomases believed that the payments were for legal services to remedy the Merchant Service sub-accounts issue. Thus, the Defendant erred by disallowing these ordinary and necessary business expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendant as follows:

31. That the Plaintiffs be refunded $412,259.00 for tax year 2017 with interest as allowed by law; and

32. For such other, further, and different relief as the Court may deem proper under the circumstances.

## JURY DEMAND

The Plaintiffs demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 2, 2022                               Respectfully submitted,

**/s/ Tyler H. DeWitt**
TYLER H. DEWITT
Florida Bar #0122005
DeWitt Law, PC
7320 E. Fletcher Ave.
Tampa, FL 33637
Telephone: (813) 603-1350
Facsimile:  (813) 603-1350
tyler@thedewittfirm.com

*Attorney for the Plaintiffs*

## VERIFICATION

We, Dennis Gomas and Suzanne Gomas, state on oath that we have read the above and foregoing pleadings and that the facts, statements, and allegations contained therein are true and correct to the best of our knowledge and belief.

Executed on 6/2/2022 , 2022.

                                                *Dennis Gomas*
                                              DENNIS GOMAS

                                                *Suzanne Gomas*
                                              SUZANNE GOMAS