UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS AND SUZANNE GOMAS,

    Plaintiff,

v.                                                                          Case No. 8:22-cv-1271-TPB-TGW

UNITED STATES OF AMERICA,

    Defendant.
_____/

## ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on "United States' Motion for Summary Judgment," filed on May 26, 2023. (Doc. 35). Plaintiffs filed their response in opposition on June 16, 2023.[1] (Doc. 37). On June 29, 2023, the Government filed a reply. (Doc. 38). After reviewing the motion, response, reply, court file, and record, the Court finds as follows:

### Background

The facts of this case are undisputed and disturbing. Plaintiffs Dennis and Suzanne Gomas are elderly individuals that worked their entire lives to build sufficient savings to comfortably retire. They were finally able to do so in June 2016. However, their peaceful retirement ended when Ms. Gomas's daughter, Suzanne Anderson, engaged in a complex scheme to defraud Plaintiffs, stealing

---

[1] Plaintiffs filed a response in opposition (Doc. 36) on June 15, 2023, but then filed an amended response in opposition to include exhibits on June 16, 2023. For clarity, the Court considers only the amended response.

Page 1 of 12

their savings. The web of never-ending lies spun by Anderson over the course of two years left her family in disbelief and nearly destitute. In fact, she stole nearly $2 million dollars from Plaintiffs, including more than $600,000 in 2017 alone. Anderson is now in prison for 25 years, right where she belongs. But this case is not about Anderson's criminal fraud – it is about whether the victims of her fraud are required to pay federal income tax on the money she stole from them. Astonishingly, for the reasons explained below, they are.

***Criminal Scheme Against Plaintiffs***

In December 2010, Plaintiffs became the owners and operators of Feline's Pride, LLC, which was inherited from Mr. Gomas's brother after his brother's death. Feline's Pride, LLC, operating online and shipping directly to customers, sold raw pet food. The principal place of business was New York, and Mr. Gomas lived in Florida. Because he could not supervise the day-to-day operations, he relied on a business manager, Jennifer Taylor. According to Plaintiffs, Ms. Taylor began stealing inventory, sold customer lists to competitors, and failed to adequately supervise other employees. In October 2014, Mr. Gomas fired Ms. Taylor and moved the business to Florida, registering the business under the name My Pets Pride, LLC. Mr. Gomas's stepdaughter, Anderson, began assisting him with the business.

In October 2015, Mr. Gomas decided to close My Pets Pride. However, Anderson convinced him to continue operating the business, and he entrusted her to oversee the day-to-day operations. In June 2016, Plaintiffs decided to retire and turned the business over to Anderson. Plaintiffs stopped its operations, dissolved

the corporation with Florida's Secretary of State, closed its bank accounts, and gave its remaining assets to Anderson.

In March 2017, Anderson told Plaintiffs that she thought she could run My Pets Pride more efficiently from a home she rented in New Port Richey. After Plaintiffs agreed, Anderson moved the business and its assets to her home. She also convinced Plaintiffs to give her $20,000 to build a fence and shed at her home to assist with the business, although during numerous visits to her home over the following months, Plaintiffs never physically observed the fence or shed she had sought to build.

On May 5, 2017, Anderson convinced Plaintiffs that Ms. Taylor and other former employees of Feline's Pride had opened merchant service sub-accounts under the main merchant service account using Mr. Gomas's personal information (including his social security number and date of birth). Anderson stated that the former employees were using the sub-accounts to defraud internet customers, and this fraud caused Merchant Services to hold the main account holder – Feline's Pride and Mr. Gomas – liable for the missing funds. She convinced Plaintiffs that they needed to hire an attorney to prevent Mr. Gomas from being arrested for the fraudulent transactions. Anderson suggested and Plaintiffs agreed to hire Anthony Rickman to represent Mr. Gomas and prevent his arrest. Anderson told Plaintiffs that Rickman needed $125,000 to prevent immediate arrest, and they provided her with that money. On May 7, 2017, Plaintiffs provided Anderson with an additional $13,000 for the same purpose.

After receipt of these payments, Rickman supposedly represented Plaintiffs, although Plaintiffs never met Rickman. The only person who communicated with Rickman was Anderson, who relayed messages to Plaintiffs that allegedly came from Rickman. Anderson often told Plaintiffs that Rickman discovered additional sub-accounts with outstanding balances, and that if they did not immediately send additional funds to Rickman to settle the accounts, Mr. Gomas would be arrested. Each time, Plaintiffs would immediately provide Anderson with the requested amounts.

The scheme ran deep, and Anderson forged numerous legal and business documents to perpetuate her fraud. For instance, on November 6, 2018, Plaintiffs received purported settlements from TD Bank and Bank of America in the amounts of $7,200,00 and $17,200,000, payable to Plaintiffs. Anderson even created a fake email address in Rickman's name to begin direct communications with Plaintiffs. Plaintiffs would often request appointments to meet with Rickman, but Anderson would convince them that she was handling everything, and that the case was going well. When pushed, Anderson would tell them that Rickman was in court or too busy to meet or communicate personally with them. Plaintiffs believed everything Anderson told them.

To fund the fake case and prevent Mr. Gomas's arrest, Plaintiffs heavily withdrew funds from their retirement accounts.[2] From January 3, 2017, to

---

[2] The retirement accounts included both an IRA and a pension plan. An IRA is "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries," and a pension plan is one created by "an employer for the exclusive benefit of [its] employees." 26 U.S.C. §§ 401(a), 408(a).

December 28, 2017, Plaintiffs personally authorized and completed numerous transactions from an IRA to SunTrust, totaling $1,133,250, handing about $600,000-$700,000 of these proceeds to Anderson. Plaintiffs entrusted Anderson with tens, and sometimes hundreds, of thousands of dollars at a time. At most, Plaintiffs handed Anderson $726,152.44 throughout 2017. The remaining expenses from the SunTrust account – whether with funds received from the IRA distributions or pensions benefits – were personal expenses of Plaintiffs. Anderson never accessed the accounts herself in 2017. She simply accepted the funds Plaintiffs gave to her on more than 100 occasions throughout the year.

On August 30, 2019, Plaintiffs met with six friends who informed them of Anderson's scam.[3] Two of these friends reached out to Attorney Anthony Rickman who confirmed that neither Plaintiffs nor Anderson were clients of his, and he was not associated with the email address that Anderson created.

Plaintiffs met with officers of the Hernando County Police Department, which began investigating Anderson and subsequently arrested her on multiple theft and fraud charges. On June 2, 2022, Anderson entered an open plea of guilty to seven counts, including four first-degree felonies and three second-degree felonies. *See State of Florida v. Suzanne Eileen Anderson*, 2021-CF-001005 (Fla. 5th Jud. Cir. 2021). On September 22, 2022, she was sentenced to a total of twenty-five years imprisonment in Florida State Prison, followed by five years of probation, on her first-degree felony counts, and to fifteen years imprisonment on her second-

---

[3] A review of Anderson's sentencing transcript reveals Anderson had many other victims, including some of these friends and family members -- their combined losses totaled over $200,000.

degree felony counts, to run concurrently. Her requests to reduce her sentences have been denied.

*Plaintiffs' 2017 Taxes*

On May 14, 2018, Plaintiffs filed their federal individual income tax return for the 2017 tax year with the Internal Revenue Service ("IRS"). This return showed taxable income of $1,175,799, which included $1,174,020 in pension and IRA distribution, a tax liability of $410,841, and payments totaling $412,259. The IRS assessed a penalty for not pre-paying the tax in the amount of $758.14. After this penalty, the IRS issued Plaintiffs a refund for their overpayment of tax in the amount of $659.86. Plaintiffs ended up reporting and paying $411,599.14 in income tax for the 2017 tax year.

On February 24, 2020, Plaintiffs filed an amended individual income tax return for the 2017 tax year. On the amended tax return, Plaintiffs sought a refund of income tax and a penalty of $412,259, plus interest. They sought to deduct from income the $1,174,020 they received from their IRA and pension accounts. Along with the amended return, Plaintiffs sent a copy of a form 1096 that showed Plaintiffs issued Anderson a 1099-MISC in the amount of $1,174,020, and a statement that indicated the distributions were used to pay expenses, such as "fictitious invoices, fake attorneys' fees, and other fraudulent mechanisms used by . . . Anderson."

On February 17, 2021, the IRS fully disallowed Plaintiffs' claim for refund, stating in a letter that these distributions were not deductible and must be included in income. On March 19, 2021, Plaintiffs filed a formal protest and request for

appeals consideration, which "further detailed the business nature" of these expenses. On March 9, 2022, the IRS rejected the appeal. Plaintiffs bring this action against the United States, seeking a refund of $412,259 that they paid to the IRS related to their 2017 tax return.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id*.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

"Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to a deduction." *Baum v. Comm'r of Internal Revenue*, 121

T.C.M. (CCH) 1315, 2021 WL 1627188, at *2 (T.C. 2021).  It is undisputed that Plaintiffs were the victims of a theft.  Historically, victims of theft were entitled to deduct a theft loss in the year the theft was discovered.  *See* 26 U.S.C. § 165(e).  However, Congress suspended the theft loss deduction for the 2018 through 2025 tax years.   *See* Tax Cuts and Jobs Act of 2017, Pub. L. 115-97, 131 Stat. 2054, 2087 (2017) (codified at 26 U.S.C. § 165(h)(5)).[4]  Because they cannot claim a theft deduction for 2019 tax year – the year the loss was discovered – Plaintiffs attempt to salvage a tax benefit from their immense losses by seeking a refund of their 2017 income taxes under two other theories involving IRA distributions and business expenses.

### *IRA Distributions and Pension Benefits*

First, Plaintiffs claim that the IRA distributions and pension benefits they received in 2017 should be excluded from their income because they did not enjoy the benefit of those funds – Anderson enjoyed the benefit of those funds through her fraudulent scheme.  The applicable statute, 26 U.S.C. § 408(d)(1), provides that "any amount paid or distributed out of an individual retirement plan shall be included in gross income, by the payee or distributee, as the case may be, in the manner provided under section 72."  Generally, the taxable distributee or payee of a distribution from an IRA is "the participant or beneficiary who, under the plan, is entitled to receive the distribution." *Roberts v. Commissioner*, 141 T.C. 569 (2013) (quoting *Bunney v. Commissioner*, 114 T.C. at 262).  Yet, some courts have

---

[4] The Tax Cuts and Jobs Act of 2017 was enacted on December 22, 2017, and became effective on January 1, 2018.

recognized an exception that the "taxable distributee" under the statute may be someone other than the recipient or purported recipient eligible to receive funds from the IRA. *Id.*

In this case, Plaintiffs are the taxable distributees despite their attempts to characterize Anderson as such. Plaintiffs authorized and directed each stock sale from Mr. Gomas's IRA account and each wire transfer to their personal SunTrust account. They freely exercised their discretion over the expenses paid from those accounts, including their personal expenses and handouts to Anderson. Plaintiffs' case is readily distinguishable from *Roberts*, where the taxpayer's ex-wife signed withdrawal requests and received and endorsed the IRA checks *without the taxpayer's authorization*, forging his signatures. Had Anderson forged Plaintiffs' signatures and collected the money herself, there would be a very different outcome here. Unfortunately for Plaintiffs, because they were the ones who requested and received the IRA distributions, they are the payees or distributees within the meaning of § 408(d)(1). Anderson's subsequent theft does not change Plaintiffs' status as distributees. *See Nice v. United States*, No. CV 18-7362, 2019 WL 5212281, at *4 (E.D. La. Oct. 16, 2019) (finding elderly woman with dementia was the taxable distributee of IRA disbursements even though son used and spent mother's IRA funds for personal enjoyment). The IRA distributions and pension funds are not deductible. As such, the United States' motion for summary judgment is granted as to this ground.

*Business Expenses*

Alternatively, Plaintiffs argue that they are entitled to deduct the funds as ordinary and necessary business expenses because they were led to believe that Anderson was using the funds to pay for legal services to resolve fictitious legal matters related to their closed business. Taxpayers may deduct "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). To be deductible, a business expense requires a taxpayer to have a "dominant hope and intent of realizing a profit," and there must exist "a minimal relationship between the expense and the advancement of the taxpayer's business." *Brannen v. Comm'r*, 722 F.2d 695, 704 (11th Cir. 1984). Ordinary and necessary business expenses may include legal fees paid for legal services. *McKenny v. United States*, 973 F.3d 1291, 1297 (11th Cir. 2020).

Regardless of how Plaintiffs believed the funds would be used, none of the money given to Anderson was used to pay any actual business expenses. It is important to note that in 2017, Plaintiffs were not engaged in any for-profit business activity – they had retired. Consequently, it is impossible to claim a relationship between the funds that Plaintiffs gave Anderson and the advancement of a businesses they had permanently closed.[5]

Plaintiffs argue that their payments to Anderson were related to business because they believed Anderson used the money to pay "legal fees" to Rickman related to their past operation of My Pets Pride. However, Plaintiffs' subjective

---

[5] The Court notes that although Plaintiffs now attempt to argue that payments to Anderson constituted ordinary and necessary business expenses, they never reported the payments on any initial tax return at the time they incurred the purported expenses.

belief based on Anderson's fraudulent conduct does not establish that legal fees were ever paid. In addition, any purported legal fees did not have any business "origin and character." *See id.* The purported legal expenses did not arise in connection with any income-producing activities – the businesses were closed and Plaintiffs retired at the time these expenses were allegedly incurred and paid. Rather, the purported legal fees appear to be personal in character and origin because the purpose of the fake legal fees was to shield Mr. Gomas from personal liability and arrest, not to protect or promote any businesses. *See id.* at 1297-98 (taxpayer's legal fees were personal in character, and therefore nondeductible, because the lawsuit concerned personal tax liability, the parties were individuals, and the complaint alleged individual injuries). The purported litigation expenses are therefore not deductible. The United States' motion for summary judgment is granted as to this ground as well.

## **Conclusion**

Plaintiffs were the undisputed victims of a complicated theft spanning around two years, resulting in the loss of nearly $2 million dollars. The thief – Mrs. Gomas's own daughter and Mr. Gomas's stepdaughter – was rightly convicted and is serving a lengthy prison sentence. The fact that these elderly Plaintiffs are now required to pay tax on monies that were stolen from them seems unjust.

In view of the egregious and undisputed facts presented here, it is unfortunate that the IRS is unwilling – or believes it lacks the authority – to exercise its discretion and excuse payment of taxes on the stolen funds. It is highly unlikely that Congress, when it eliminated the theft loss deduction beginning in

2018, envisioned injustices like the case before this Court. Be that as it may, the law is clear here and it favors the IRS. Seeking to avoid an unjust outcome, Plaintiffs have attempted to recharacterize the facts from what they really are -- a theft loss -- to something else. Established law does not support this effort. The Court is bound to follow the law, even where, as here, the outcome seems unjust.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "United States' Motion for Summary Judgment" (Doc. 35) is **GRANTED**.

(2) The Clerk is **DIRECTED** to enter final judgment in favor of the United States of America, and against Plaintiffs Dennis and Suzanne Gomas.

(3) Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>17th</u> day of July, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**